**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

------------------------------------------------------------ x
:
In re:                                                       :   Chapter 11
                                                             :
F-STAR SOCORRO, L.P., *et al.*,                              :   Case No. 25-90607 (ARP)
                         Debtors.[1]                         :
                                                             :   Jointly Administered
                                                             :
------------------------------------------------------------ x

**DEBTORS' EMERGENCY MOTION FOR ENTRY OF INTERIM AND FINAL
ORDERS (I) AUTHORIZING THE DEBTORS TO CLOSE PENDING REAL
ESTATE TRANSACTIONS AND SELL ASSETS FREE AND CLEAR OF
LIENS, CLAIMS, ENCUMBRANCES, AND OTHER INTERESTS
AND (II) GRANTING RELATED RELIEF**

> **Emergency relief has been requested. Relief is requested not later than 11:00 a.m. (prevailing Central Time) on November 6, 2025.**
>
> **If you object to the relief requested or you believe that emergency consideration is not warranted, you must appear at the hearing if one is set, or file a written response prior to the date that relief is requested in the preceding paragraph. Otherwise, the Court may treat the pleading as unopposed and grant the relief requested.**
>
> **A hearing will be conducted on this matter on November 6, 2025, at 11:00 a.m. (prevailing Central Time) in Courtroom 400, 515 Rusk, Houston, TX 77002.**
>
> **Participation at the hearing will only be permitted by an audio and video connection.**
>
> **Audio communication will be by use of the Court's dial-in facility. You may access the facility at 832-917-1510. Once connected, you will be asked to enter the conference room number. Judge Pérez's conference room number is 282694. Video communication will be by use of the GoToMeeting platform. Connect via the free GoToMeeting application or click the link on Judge Pérez's home page. The meeting code is "Judge Pérez". Click the settings icon in the upper right corner and enter your name under the personal information setting.**

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are F-Star Socorro, L.P. (7438); Five Star Development Properties, LLC (2183); Five Star Development Resort Communities, LLC (1282); Five Star Resort Holdings Parent, LLC (N/A); Five Star Resort Holdings, LLC (N/A); Five Star Resort Mezz, LLC (N/A); Five Star Resort Owner, LLC (4994); Five Star Land Holdings Parent, LLC (N/A); Five Star Land Holdings (AZ), LLC (N/A); Five Star Land Mezz, LLC (N/A); Five Star Land Owner, LLC (N/A); FSPV Mezz C Sub LLC (5233); FSPV Res C, LLC (8745); 11751 Alameda Avenue Owner, LLC (2300); JNY Building Owner, LLC (6282); JNY II Building Owner, LLC (9687); 1340 Bob Hope Drive Owner, LLC (4986); JNY, L.P. (3609); JNY II, L.P. (3041); 5 Star Tech I, L.P. (4020); 5 Star Tech II-1, LP (5916); 5 Star Tech II-4, LP (2357); 5-Star Tech II-2, L.P. (6602); F-Star Socorro Holding Co., LLC (6729); JNY Mezz, LLC (N/A); JNY II Mezz, LLC (N/A); 5 Star Tech I GP, LLC (N/A); 5 Star Tech II-1 GP, LLC (N/A); 5 Star Tech II-4 GP, LLC (N/A); 1340 Bob Hope Drive Parent, LLC (N/A); 11751 Alameda Avenue Parent, LLC (N/A); Unit 82 El Paso Owner, LLC (2399); Southwest Rojas Parent, LLC (N/A); and Southwest Rojas, LLC (N/A). The Debtors' mailing address in these chapter 11 cases is 6720 N. Scottsdale Rd., #130, Scottsdale, AZ 85253.

> **Hearing appearances must be made electronically in advance of both electronic and in-person hearings. To make your appearance, click the "Electronic Appearance" link on Judge Pérez's homepage. Select the case name, complete the required fields, and click "Submit" to complete your appearance.**

F-Star Socorro, L.P. and its affiliated debtors and debtors in possession (collectively, the **"Debtors"**) hereby submit this motion (the **"Motion"**) and respectfully request entry of an order (i) authorizing the Debtors, in their discretion, to carry out the closing of pending real estate transactions and sell assets free and clear of liens, claims, encumbrances, and other interests and (ii) granting related relief. In support of this motion, the Debtors rely on and incorporate by reference the *Declaration of Lance Miller in Support of the Debtors' Chapter 11 Petitions and First Day Pleadings* (the "**Miller Declaration**"), filed concurrently with this Motion.[2] In further support of the Motion, the Debtors, by and through their undersigned proposed counsel, respectfully represent:

## JURISDICTION AND VENUE

1. The United States Bankruptcy Court for the Southern District of Texas (the "**Court**") has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and the Order of Reference to Bankruptcy Judges from the United States District Court for the Southern District of Texas, entered May 24, 2012. This is a core proceeding pursuant to 28 U.S.C. § 157(b). The Debtors confirm their consent to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

2. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

---

[2] Capitalized terms used but not defined in this Motion have the meanings used in the Miller Declaration.

2

3.     The bases for the relief requested herein are section 363 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the **"Bankruptcy Code"**), rules 2002, 6003, and 6004 of the Federal Rules of Bankruptcy Procedure (the **"Bankruptcy Rules"**), rules 1001-1(d), 4002-1(b), and 9013-1 of the Bankruptcy Local Rules for the Southern District of Texas (the **"Bankruptcy Local Rules"**), and the *Procedures for Complex Cases in the Southern District of Texas* (the "**Complex Case Procedures**").

## BACKGROUND

4.     On November 4, 2025 (the "**Petition Date**"), each of the Debtors filed a voluntary petition with this Court for relief under chapter 11 of the Bankruptcy Code. The Debtors continue to manage and operate their businesses as debtors in possession under sections 1107(a) and 1108 of the Bankruptcy Code.

5.     The Debtors own and operate a diversified portfolio of commercial real estate properties, including hotel, retail, office, and industrial properties. Within the Debtors' portfolio is a 122-acre ultra-luxury mixed-use development located at the border of Paradise Valley and Scottsdale, Arizona (the **"Project"**). The Project integrates world-class hospitality, residential, and retail experiences, anchored by The Ritz-Carlton, Paradise Valley. Upon completion, the Project is expected to be a premier destination, consisting of three principal components: (i) a newly-constructed 215-room ultra-luxury resort that will be managed by The Ritz-Carlton Hotel Company, LLC, a subsidiary of Marriott upon completion; (ii) luxurious private residences, consisting of 80 Ritz-Carlton-branded Villas—all pre-sold—and 32 high-end estate homes, several of which are occupied, under construction, or under contract within the 12-acre resort enclave; and (iii) a fully entitled 29-acre site planned for development as a luxury retail and mixed-use district featuring high-end retail, dining, and experiential offerings, with luxury tenants, and a nine-acre

3

parcel designated for future development of luxury condominiums in partnership with globally recognized design houses.

6. The Debtors also own and operate several commercial and industrial properties in El Paso, Texas, including (i) fully occupied warehouse and distribution facilities located at (x) 1273 Joe Battle Boulevard, El Paso, Texas, 1277 Joe Battle Boulevard, El Paso, Texas, 1281 Joe Battle Boulevard, El Paso, Texas, 1301 Joe Battle Boulevard, El Paso, Texas, and 1321 Joe Battle Boulevard, El Paso, Texas totaling over 775,000 square feet of net rentable area on over 40 acres of land; (y) 11751 Alameda Avenue, El Paso, Texas totaling over 1,445,000 square feet of net rentable area on over 66 acres of land; and (z) 1340 Bob Hope Drive, El Paso, Texas totaling over 190,000 square feet of net rentable area on over 9 acres of land; and (ii) vacant warehouse and distribution facilities at 11891 Alameda Avenue, El Paso, Texas totaling over 860,000 square feet of net rentable land on over 34 acres. In addition, the Debtors own over 107 acres of vacant developable land in El Paso.

7. Additional information on the Debtors' businesses and capital structure, as well as a description of the reasons for filing these cases, is set forth in the Miller Declaration.

## RELIEF REQUESTED

8. The Debtors respectfully request entry of interim and final orders, substantially in the forms attached as **Exhibit A** (the "**Interim Order**") and **Exhibit B** (the "**Final Order**") (i) authorizing the Debtors, in their discretion, to carry out the closing of pending real estate transactions and sell assets free and clear of liens, claims, encumbrances, and other interests and (ii) granting related relief.

**BASIS FOR RELIEF REQUESTED**

**I. FACTS SPECIFIC TO RELIEF REQUESTED**

9. The Project includes the construction and sale of eighty (80) Ritz-Carlton-branded, resort-integrated villas (the "**Villas**"). The Villas constitute a critical aspect of the Project, as they establish a year-round presence that will enhance the performance of the nearby Ritz-Carlton resort hotel and the luxury retail, dining, and experiential district on the resort. During a single residential release in 2016, all eighty (80) Villas were pre-sold within a matter of days, generating approximately $250 million in purchase commitments. Vertical construction of the Villas commenced in 2018 and continues today.

10. As of the date of this Motion, there are (a) forty-four (44) Villas that have closed and are fully occupied by residents, (b) twenty-nine (29) Villas that are currently under contract for sale to third-party buyers and are yet to close (the "**Pending Transactions**"), and (c) seven (7) Villas that were previously under contract, but those contracts have since been terminated (the "**Future Sales**").[3] The Pending Transactions and Future Sales are expected to generate at least $124,000,000 in net sale proceeds. A number of the Pending Transactions are scheduled to close in November, including several closings that are expected to occur within a week of the Petition Date. The remaining Villas that are subject to Pending Transactions are in varying stages of construction, many of which are near completion.

11. In the ordinary course, buyers (the "**Buyers**") enter into *Condominium Purchase Contract and Joint Escrow Instructions* agreements (the "**Villa Agreements**") with Debtor Five

---

[3] As of the filing of this Motion, the Debtors are aware of seven Villas that are no longer under contract and may need to be re-listed for sale. In the event that any of the Pending Transactions fail to close, the relief requested in the Motion is intended to apply to all future sales of the Villas, regardless of whether the Villa is currently under contract.

Star Resort Owner, LLC ("**Seller**"). Upon execution, a Buyer must pay an initial deposit—typically ten percent (10%) of the purchase price—followed by a second deposit thirty (30) days later. All deposits are paid into escrow but are expressly deemed earned by Seller as of the effective date and are non-refundable except as otherwise stated in the Villa Agreement. A portion equal to three percent (3%) of the purchase price may be released from escrow to pay broker commissions once certain presale conditions are met.

12. Under the Villa Agreements, Seller must complete the Villa within two years of Buyer's execution. Closing typically occurs within ten days after Seller notifies Buyer that the Villa is complete and available for occupancy, as confirmed by a certificate of occupancy. Buyer is then required to deposit all remaining funds and documents into escrow before closing. After satisfaction of brokerage commissions, customary closing costs, and a royalty fee payable to The Ritz-Carlton under the Project's licensing arrangement, the remaining net sale proceeds are deposited into a designated bank account controlled by Madison Realty Capital L.P. ("**Madison**") or an affiliate thereof.

13. This Motion seeks authority, out of an abundance of caution, to permit the Pending Transactions and any Future Sales to close free and clear of any liens, claims, encumbrances, and other interests and to deposit the resulting sale proceeds into a segregated debtor-in-possession account,[4] subject to any valid and perfected liens, including any Mechanics' Liens.[5] The Debtors

---

[4] Contemporaneously with the filing of this Motion, the Debtors have filed the *Debtors' Emergency Motion for Entry of Interim and Final Orders (I) Authorizing Continued Use of the Debtors' Existing Cash Management System and Bank Accounts; (II) Waiving Certain United States Trustee Requirements; (III) Extending Time to Comply with Section 345(b) of the Bankruptcy Code; (IV) Authorizing Continued Performance of Intercompany Transactions; and (V) Granting Related Relief*, which seeks, among other things, authority to open the segregated Villa account.

[5] In order to complete and deliver the Villas, the Debtors rely on, and routinely contract with, a number of third parties, including contractors, subcontractors, and suppliers, who may be able to assert liens against the Villas to secure payment for certain services. Many of the holders of these claims have rights under applicable state law to

believe that the relief requested herein is critical to the success of these chapter 11 cases. Allowing the Pending Transactions and any Future Sales to close will provide meaningful certainty and transparency to the Buyers. If the Debtors are not permitted to close the Pending Transactions, they will be deprived of one of their primary business activities, significantly hampering their likelihood of a successful chapter 11 reorganization.

## II. LEGAL BASIS FOR RELIEF REQUESTED

### A. The Debtors are Authorized to Close the Pending Transactions Under Section 363(c) of the Bankruptcy Code

14. The Debtors believe that closing the Pending Transactions and any Future Sales is well within the ordinary course of business for the Debtors, and is therefore authorized pursuant to section 363(c)(1) of the Bankruptcy Code. Specifically, section 363(c)(1) of the Bankruptcy Code permits debtors-in-possession to "enter into transactions, including the sale or lease of property of the estate, in the ordinary course of business, without notice or hearing." 11 U.S.C. § 363.

15. To determine whether a transaction is "in the ordinary course of business," courts typically consider whether the transaction satisfies both the "horizontal" test and "vertical" test. *See In re Patriot Place, Ltd.*, 486 B.R. 773, 793 (Bankr. W.D. Tex. 2013); *see also Aalfs v. Wirum (In re Straightline Investments, Inc.)*, 525 F.3d 870, 879 (9th Cir. 2008); *Braunstein v. McCabe*, 571 F.3d 108, 124 (1st Cir. 2009). The horizontal test looks to whether the transaction was "of the sort commonly undertaken by companies in the industry," specifically considering a debtor's prepetition conduct. *In re Patriot Place*, 486 B.R. at 793. The vertical test considers whether the

---

assert and perfect tax, construction, materialmans', or mechanics' liens or other similar claims that have given or could give rise to liens against the Debtors' property (collectively, the "**Mechanics' Liens**").

7

transaction would subject a hypothetical creditor to economic risks that are different from those that existed when they extended the credit originally. *Id.*

16. With respect to the horizontal test, the Court should consider the practices of real estate developers similar to the Debtors to determine whether the Pending Transactions and any Future Sales fall within the industry's common practice. *In re Patriot Place*, 486 B.R. at 793. As a real estate developer, the Debtors' profitability is contingent on the purchasing, developing, and selling of real estate. When considering whether the sale of portfolio real estate is in the "ordinary course of business" for a real estate developer, this Court has answered in the affirmative, even in instances where sales agreements were yet to be entered into. *See In re Diamond Beach VP, LP*, No. 12-10175-B-11, 2013 WL 12573918, at *1 (Bankr. S.D. Tex. July 26, 2013) (permitting a condominium developer to enter into transactions to sell real estate in the ordinary course of business under section 363(c)). Thus, the Debtors' sale of the Villas and closing of the Pending Transactions and any Future Sales satisfies the horizontal test as it is consistent with the common practices of real estate developers.

17. With respect to the vertical test, this Court should consider creditor expectations, and whether the Pending Transactions and any Future Sales expose creditors to risks that they would not have anticipated when they extended credit initially. *In re Patriot Place*, 486 B.R. at 793. Here, the Debtors' creditors would not only reasonably expect, but desire that the Debtors continue to sell Villas in order to maximize value for all stakeholders. It is critical to the Debtors' entire enterprise that the property developed is later sold or leased. Thus, the vertical test is satisfied because the sale of the Villas is precisely the sort of transaction that creditors contemplate when considering the economic risks of extending credit to real estate developers such as the Debtors.

18. Accordingly, both aspects of the "ordinary course of business" test are satisfied with respect to the sale of the Villas, and the Debtors should be authorized to close the Pending Transactions and any Future Sales under section 363(c) of the Bankruptcy Code.

**B.  Authorizing the Closing of the Pending Transactions Is Appropriate Under Section 363(b) of the Bankruptcy Code**

19. To the extent that the Court finds that the closing of the Pending Transactions and any Future Sales are not transactions in the ordinary course of the Debtors' business, the Debtors respectfully request that the Court authorize the Debtors to take such actions pursuant to section 363(b)(1) of the Bankruptcy Code.

20. Under section 363(b)(1) of the Bankruptcy Code, a debtor may, in the exercise of its sound business judgment and after notice and a hearing, "use, sell or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. 363(b)(1). A debtor may sell estate property outside the ordinary course of business under this provision if there is a good business reason for doing so. *See, e.g.*, *In re ASARCO, L.L.C.*, 650 F.3d 593, 601 (5th Cir. 2011). "Great judicial deference is given to the [debtor in possession's] exercise of business judgment" regarding the sale of estate property. *GBL Holding Co. v. Blackburn/Travis/Cole, Ltd.*, 331 B.R. 251, 254 (Bankr. N.D. Tex. 2005). Once a debtor articulates a valid business justification, then the burden of rebutting the "strong presumption . . . that the agreement at issue was negotiated in good faith and in the best interests of the estate" falls to parties opposing the transaction. *In re Filene's Basement*, No. 11-13511, 2014 WL 1713416, at *12 (Bankr. D. Del. Apr. 29, 2014); *see In re Integrated Res., Inc.*, 147 B.R. 650, 656 (S.D.N.Y. 1992), *appeal dismissed*, 3 F.3d 49 (2d Cir. 1993). Thus, if a debtor satisfies the business judgment rule, the transaction in question should be approved under section 363(b)(1) of the Bankruptcy Code.

21. Bankruptcy Rule 6004(f)(1) authorizes a debtor to sell estate property outside of the ordinary course of its business by private sale or public auction. *See* Fed. R. Bankr. P. 6004(f)(1). Private sales are appropriate where the debtor demonstrates that the proposed sale is permissible pursuant to section 363 of the Bankruptcy Code. *See In re Cypresswood Land Partners, I*, 409 B.R. 396, 436 (Bankr. S.D. Tex. 2009) ("[T]here is no prohibition against a private sale . . . and there is no requirement that the sale be by public auction." (quoting *Penn. Mut. Life Ins. Co. v. Woodscape Ltd. P'ship (In re Woodscape Ltd. P'Ship)*, 134 B.R. 165, 174 (Bankr. D. Md. 1991))); *In re Dura Auto. Sys., Inc.*, No. 06-11202, 2007 WL 7728109, at *88 (Bankr. D. Del. Aug. 15, 2007) ("[S]ales of property rights outside the ordinary course of business may be by private sale or public auction."). Additionally, a debtor has broad discretion to determine the manner in which its assets are sold. *See Berg v. Scanlon (In re Alisa P'ship)*, 15 B.R. 802, 802 (Bankr. D. Del. 1981) (holding that section 363 of the Bankruptcy Code "clearly indicates that the manner of sale is within the discretion of the trustee"); *see also In re Bakalis*, 220 B.R. 525, 531 (Bankr. E.D.N.Y. 1998) (noting that a trustee has ample authority to conduct a sale of estate property through a private or public sale). Courts in this and other jurisdictions routinely authorize private sales pursuant to section 363 of the Bankruptcy Code.[6]

22. Consummating the Pending Transactions and any Future Sales on the terms set forth in the applicable Villa Agreements is a sound exercise of the Debtors' business judgment. The sales of the Villas were negotiated and agreed to prepetition in the ordinary course of the Debtors' business. Proceeding to close in accordance with the Villa Agreements maintains the

---

[6] *See, e.g., In re Kal Freight Inc.*, No. 24-90614 (CML) (Bankr. S.D. Tex. Mar. 31, 2025); (authorizing a private sale of certain of the debtors' assets without bidding procedures or an auction); *In re Envision Healthcare Corp.*, No. 23-90342 (CML) (Bankr. S.D. Tex. Aug. 1, 2023) (same); *In re Katerra Inc.,* No. 21-31861 (DRJ) (Bankr. S.D. Tex. July 8, 2021) (same); *In re Wheel Pros LLC*, No. 24- 11939 (Bankr. D. Del. Oct. 15, 2024) (same); *In re MVK FarmCo LLC*, No. 23-11721 (LSS) (Bankr. D. Del. Mar. 11, 2024) (same).

Debtors' credibility, trust, and goodwill with the Buyers and other potential business partners, which is critical to the Debtors' ongoing ability to transact efficiently and maximize value in these cases. If the requested relief is denied, the pending closings will need to be canceled, which could lead to Buyers terminating their Villa Agreements (as some Buyers have already done). Moreover, any delay will materially impair the Debtors' ability to successfully close Future Sales, particularly given that the Debtors are entering the peak Arizona weather and real estate season. Failure to close the Pending Transactions and any Future Sales would result in the Villas sitting vacant at a time when they could be delivering essential capital to support the Debtors' restructuring efforts. Accordingly, the Debtors respectfully submit that closing the Pending Transactions and any Future Sales is a sound exercise of their business judgment and should be approved.

23. The Debtors recognize the importance of keeping this Court and parties in interest informed of any developments with respect to the sale of property of the Debtors' estates. Accordingly, the Debtors propose to file a monthly report identifying the Villa sales that closed during the prior month and the amount of sale proceeds deposited into the Segregated Account (as defined below) with respect to such sales.

**C.    The Sale of the Villas Free and Clear of Liens Is Appropriate Under Section 363(f) of the Bankruptcy Code**

24. Section 363(f) of the Bankruptcy Code permits a debtor to sell property free and clear of another party's interest in the property if: (a) applicable nonbankruptcy law permits such a free and clear sale; (b) the holder of the interest consents; (c) the interest is a lien and the sale price of the property exceeds the value of all liens on the property; (d) the interest is the subject of a bona fide dispute; or (e) the holder of the interest could be compelled in a legal or equitable proceeding to accept a monetary satisfaction of its interest. *See* 11 U.S.C. § 363(f).

25. Section 363(f) of the Bankruptcy Code is drafted in the disjunctive. Thus, satisfaction of any of the requirements enumerated therein will suffice to warrant the sale of the applicable property free and clear of all interests. *See In re C-Power Prods., Inc.*, 230 B.R. 800, 803 (Bankr. N.D. Tex. 1998); *In re Nature Leisure Times, LLC*, No. 06-41357, 2007 Bankr. LEXIS 4333, at *7 (Bankr. E.D. Tex. Dec. 19, 2007).

26. The Debtors submit that the sale of the Villas should be approved free and clear of any liens, claims, encumbrances, and other interests because one or more of the requirements under section 363(f) of the Bankruptcy Code are satisfied. As an initial matter, the absence of any objection to the relief sought in this Motion is, or should be deemed, consent within the meaning of section 363(f)(2) of the Bankruptcy Code. *See Borders Group*, 453 B.R. 477, 484 (Bankr. S.D.N.Y. 2011) ("Under 363(f)(2), a lienholder who receives notice of a sale but does not object within the prescribed time period is deemed to consent to the proposed sale, and assets thereafter may be sold free and clear of liens.").

27. Further, to the extent there are any valid lienholders, they will be adequately protected by having their liens attach to the proceeds of the sales, subject to any claims and defenses that the Debtors may have with respect thereto. *See, e.g.*, *In re Healthco Int'l, Inc.*, 174 B.R. 174, 177 (Bankr. D. Mass. 1994) ("I therefore conclude the Trustee may sell the property pursuant to section 363(f)(5), free of the County's lien, with the lien transferred to the sales proceeds. Transfer of the lien to the proceeds provides adequate protection for the lien."); 3 Collier on Bankruptcy P 363.06 (16th 2023) ("Section 363(f) permits a sale of property of the estate free and clear of an interest in the property, including a lien, under a number of circumstances. It has long been recognized that the bankruptcy court has the power to authorize the sale of property free of liens with the liens attaching to the proceeds, with or without the consent of the lienholder.").

*In re Crescent Resources, LLC*, No. 09-11507-CAG (Bankr. W.D. Tex. June 25, 2009) (granting debtors the authority to enter into sales free and clear of mechanics' liens and approving similar procedures for protecting lienholder interests).

28. In order to facilitate the receipt of funds from the Pending Transactions and any Future Sales, the Debtors seek authorization to establish a segregated bank account to hold the proceeds of any Villa sales subject to any valid and perfected lien claims against such proceeds (the "**Segregated Account**"). This approach ensures that the sale proceeds remain segregated and traceable without prejudicing any lienholder's rights to assert claims against the proceeds (subject to any claims and defenses that the Debtors may have with respect thereto). At this time, the Debtors are not seeking authorization to distribute any of the sale proceeds from the Segregated Account and will not do so without further order of the Court.

29. Thus, section 363(f)(3) of the Bankruptcy Code is satisfied with respect to the sales of the Villas. The Debtors accordingly request authority to sell the Villas and close the Pending Transactions and any Future Sales free and clear of all liens, claims, encumbrances, and other interests.

**D.    The Buyers Purchased the Villas in Good Faith and Are Entitled to the Full Protections of Section 363(m) of the Bankruptcy Code**

30. Section 363(m) of the Bankruptcy Code provides that "[t]he reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith[.]" 11 U.S.C. § 363(m). Although "[t]he Bankruptcy Code does not explicitly define 'good faith,'" the Fifth Circuit has stated that a good faith purchaser is one who (a) "purchases the assets for value, in good faith, and without notice of adverse claims" and (b) "one who does not engage in 'misconduct' including," among other things,

13

"fraud, collusion between the purchaser and other bidders, or an attempt to take grossly unfair advantage of other bidders." *SR Construction, Inc. v. Hall Palm Springs, L.L.C. (In re Palm Springs II, L.L.C.)*, 65 F.4th 752, 759 (5th Cir. 2023) (quoting *In re TMT Procurement Corp.*, 764 F.3d 512, 521 (5th Cir. 2014)). "Typically, the misconduct that would destroy a purchaser's good faith status at a judicial sale involves fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders." *In re Abbotts Dairies of Pa.*, 788 F.2d 143, 147 (3d Cir. 1986).

31. Here, each of Buyers are bona-fide purchasers who negotiated these transactions at arm's length, for fair value, and in good faith. The Pending Transactions represent the market value of the Villas achieved through the residential release held in 2016, which was open to the public. Additionally, there is no evidence of fraud, misrepresentation, or misconduct with respect to the sales of the Villas. Accordingly, the Buyers should be expressly found to have acted in good faith within the meaning of section 363(m) of the Bankruptcy Code and entitled to the statutory protections thereunder.

E. **Relief Under Bankruptcy Rule 6004(h) is Appropriate**

32. Bankruptcy Rule 6004(h) provides that an "order authorizing the use, sale, or lease of property . . . is stayed until the expiration of fourteen days after the entry of the order, unless the court orders otherwise." The Debtors request that the Interim Order be effective immediately upon its entry by providing that the fourteen-day stay under Bankruptcy Rule 6004(h) is waived.

33. Although Bankruptcy Rule 6004(h) and the Advisory Committee Notes are silent as to when a court should "order otherwise" and eliminate or reduce the fourteen-day stay period, the leading treatise on bankruptcy suggests that the fourteen-day stay should be eliminated to allow a sale or other transaction to close immediately "where there has been no objection to procedure." 10 Collier on Bankruptcy ¶¶ 6004.11, 6004.04 (16th rev. ed. 2014).

34. Here, waiver of the fourteen-day stay is justified on a number of grounds. A number of the Pending Transactions are scheduled to close in November, including several closings that are expected to occur within a week of the Petition Date. Imposition of the stay would force the Debtors to cancel scheduled closings, which creates a meaningful risk that Buyers will exercise termination rights under the Villa Agreements (as some Buyers have already done). In addition, the Buyers have already made logistical and financial arrangements in reliance on the agreed closing dates, including scheduling movers, coordinating deliveries, and incurring other move-in related expenses. Imposing a stay under these circumstances would cause unnecessary hardship to the Buyers and deprive the estates of necessary liquidity.

35. Finally, allowing the Pending Transactions to close in the interim period does not prejudice the claims of any lienholders. Any valid and perfected liens will attach to proceeds of the sales, which will be held in the Segregated Account, putting the lienholders in a nearly identical position to the one they were in prior to the sale.

36. The urgency of the relief requested justifies immediate relief. Accordingly, the Debtors request that the Court waive the fourteen-day stay period under Bankruptcy Rule 6004(h). To ensure the relief requested is implemented immediately, the Debtors further request that the Court waive the notice requirements under Bankruptcy Rule 6004(a).

## **RESERVATION OF RIGHTS**

37. Nothing contained in this Motion is an admission of the validity of any claim against the Debtors, a waiver of the Debtors' or any other party's rights to dispute any claim, or an approval or assumption of any agreement, contract, or lease under section 365 of the Bankruptcy Code. If this Court grants the relief requested in this Motion, any Court-authorized payment is not

an admission of the validity of any claim or a waiver of the Debtors' or any other party's rights to subsequently dispute such claim.

## EMERGENCY CONSIDERATION

38. The Pursuant to Bankruptcy Local Rule 9013-1, the Debtors request emergency consideration of this Motion pursuant to Bankruptcy Rule 6003, which empowers a court to grant relief within the first twenty-one days following the commencement of a chapter 11 case if "relief is needed to avoid immediate and irreparable harm." For the reasons discussed above, an immediate and orderly transition into chapter 11 is critical to the viability of the Debtors' operations. The requested relief is necessary for the Debtors to operate their businesses in the ordinary course and consistent with prepetition practice, preserve the ongoing value of their operations, and maximize the value of their estates for the benefit of all stakeholders. The Debtors have demonstrated that the requested relief is "needed to avoid immediate and irreparable harm," as contemplated by Bankruptcy Rule 6003, and request that the court grant the relief requested in this Motion.

## MODIFICATION OF BANKRUPTCY RULE 2002(a)(2)

39. The Debtors request that the Court, for cause, modify the services requirements set forth in Bankruptcy Rule 2002(a)(2) to limit service of this Motion only to the core service list. In light of the breadth and complexity of the Debtors' businesses and lack of prejudice to lienholders that will result from entry of the Interim Order, serving the Motion on all creditors, even those that are unaffected by the relief sought herein, would cause unnecessary confusion and expense to the detriment of all stakeholders. Accordingly, sufficient cause exists under Bankruptcy Rule 2002(a)(2) to modify the service requirements for this Motion.

## NOTICE

40. The Debtors will provide notice of this Motion to the following parties or their respective counsel: (i) the Office of the United States Trustee for the Southern District of Texas; (ii) the holders of the 30 largest unsecured claims against the Debtors on a consolidated basis; (iii) the lenders and/or agents under the Debtors' prepetition debt instruments; (iv) the lender under the Debtors' proposed debtor-in-possession financing instruments; (v) the Internal Revenue Service; (vi) the Securities and Exchange Commission; (vii) the state attorneys general for states in which the Debtors conduct business; (viii) Madison and any known holders of Mechanics' Liens; and (ix) any party that has requested notice pursuant to Bankruptcy Rule 2002. A copy of this Motion is also available on the Debtors' case website at https://cases.stretto.com/FStarSocorro. Due to the urgency of the relief requested, the Debtors submit that no other or further notice is necessary.

[*Remainder of Page Intentionally Left Blank*]

## **CONCLUSION**

WHEREFORE, the Debtors respectfully request entry of the Interim Order and Final Order granting the relief requested in its entirety and any other relief as is just and proper.

Dated:  November 5, 2025
        Dallas, Texas

/s/ *Nicholas J. Hendrix*
**O'MELVENY & MYERS LLP**
Nicholas J. Hendrix (TX Bar No. 24087708)
2801 North Harwood Street, Suite 1600
Dallas, Texas 75201
Telephone: (972) 360-1900
Facsimile: (972) 360-1901
Email: nhendrix@omm.com

- and -

Julian Gurule (*pro hac vice* admission pending)
400 South Hope Street, 19th Floor
Los Angeles, California 90071
Telephone: (213) 430-6000
Facsimile: (213) 430-6407
Email: jgurule@omm.com

- and -

Peter Friedman (*pro hac vice* admission pending)
Matthew Kremer (*pro hac vice* admission pending)
Diana M. Perez (*pro hac vice* admission pending)
1301 Avenue of the Americas, Suite 1700
New York, New York 10019
Telephone: (212) 326-2000
Facsimile: (212) 326-2061
Email: pfriedman@omm.com
       mkremer@omm.com
       dperez@omm.com

*Proposed Attorneys for the
Debtors and Debtors in Possession*

**Certificate of Accuracy**

In accordance with Bankruptcy Local Rule 9013-1(i), I hereby certify that the foregoing statements are true and accurate to the best of my knowledge.

/s/ Nicholas J. Hendrix
Nicholas J. Hendrix

**Certificate of Service**

I certify that on November 5, 2025, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas and will be served as set forth in the Affidavit of Service to be filed by the Debtors' noticing agent.

/s/ Nicholas J. Hendrix
Nicholas J. Hendrix