**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **IN RE:** | § | **CASE NO. 25-90607 (ARP)** |
| **F-STAR SOCORRO, L.P., *et al.*,** | § | **CHAPTER 11** |
| **DEBTORS.**[1] | § | **Jointly Administered** |

**RC PV LENDER I LLC's NOTICE OF INTENT TO ISSUE THIRD-PARTY SUBPOENA TO CLAUDIA S. AYOUB FOR PRODUCTION OF DOCUMENTS**

PLEASE TAKE NOTICE that, pursuant to Federal Rule of Civil Procedure 45, made applicable herein by Federal Rule of Bankruptcy Procedure 9016, RC PV Lender I LLC (the "Lender"), by and through its undersigned counsel, intends to serve the Subpoena in the form attached hereto as Exhibit 1 upon Claudia S. Ayoub, at [redacted], on December 5, 2025, or as soon thereafter as service may be effectuated.

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are F-Star Socorro, L.P. (7438); Five Star Development Properties, LLC (2183); Five Star Development Resort Communities, LLC (1282); Five Star Resort Holdings Parent, LLC (N/A); Five Star Resort Holdings, LLC (N/A); Five Star Resort Mezz, LLC (N/A); Five Star Resort Owner, LLC (4994); Five Star Land Holdings Parent, LLC (N/A); Five Star Land Holdings (AZ), LLC (N/A); Five Star Land Mezz, LLC (N/A); Five Star Land Owner, LLC (N/A); FSPV Mezz C Sub LLC (5233); FSPV Res C, LLC (8745); 11751 Alameda Avenue Owner, LLC (2300); JNY Building Owner, LLC (6282); JNY II Building Owner, LLC (9687); 1340 Bob Hope Drive Owner, LLC (4986); JNY, L.P. (3609); JNY II, L.P. (3041); 5 Star Tech I, L.P. (4020); 5 Star Tech II-1, LP (5916); 5 Star Tech II-4, LP (2357); 5-Star Tech II-2, L.P. (6602); F-Star Socorro Holding Co., LLC (6729); JNY Mezz, LLC (N/A); JNY II Mezz, LLC (N/A); 5 Star Tech I GP, LLC (N/A); 5 Star Tech II-1 GP, LLC (N/A); 5 Star Tech II-4 GP, LLC (N/A); 1340 Bob Hope Drive Parent, LLC (N/A); 11751 Alameda Avenue Parent, LLC (N/A); Unit 82 El Paso Owner, LLC (2399); Southwest Rojas Parent, LLC (N/A); and Southwest Rojas, LLC (N/A). The Debtors' mailing address in these Chapter 11 Cases is 6720 N. Scottsdale Rd., #130, Scottsdale, AZ 85253.

Dated: December 5, 2025

Respectfully submitted,
*/s/ Charles A. Beckham, Jr.*

HAYNES AND BOONE, LLP
Charles A. Beckham, Jr.
Texas Bar No. 0201660
Patrick L. Hughes
Texas Bar No. 10227300
Imaan Patel
Texas Bar No. 24139247
Adam Schmit
Texas Bar No. 24138414
1221 McKinney Street, Suite 400
Houston, TX 77010
Tel: 713-547-2000
Fax: 713-547-2600
Email: charles.beckham@haynesboone.com
Email: patrick.hughes@haynesboone.com
Email: imaan.patel@haynesboone.com
Email: adam.schmit@haynesboone.com

-and-

DAVIS POLK & WARDWELL LLP
Marshall S. Huebner (*pro hac vice*)
Elliot Moskowitz (*pro hac vice*)
Eli J. Vonnegut (*pro hac vice*)
Adam M. Greene (*pro hac vice*)
450 Lexington Avenue
New York, NY 10017
Tel: 212-450-4000
Fax: 212-701-5800
Email: marshall.huebner@davispolk.com
Email: elliot.moskowitz.com
Email: eli.vonnegut@davispolk.com
Email: adam.greene@davispolk.com

*Attorneys for RC PV Lender I LLC*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on December 5, 2025, a true and correct copy of *RC PV Lender I LLC'S Notice of Intent to Issue Third-Party Subpoena to Claudia S. Ayoub* was served by CM/ECF to those participating in the Court's ECF notification system.

*/s/ Charles A. Beckham, Jr.*

Charles A. Beckham, Jr.

# EXHIBIT 1

B2570 (Form 2570 – Subpoena to Produce Documents, Information, or Objects or To Permit Inspection in a Bankruptcy Case or Adversary Proceeding) (12/15)

# UNITED STATES BANKRUPTCY COURT

SOUTHERN District of TEXAS

In re F-STAR SOCORRO, L.P.
Debtor

Case No. 25-90607 (ARP)

*(Complete if issued in an adversary proceeding)*

Chapter 11

Plaintiff
v.

Adv. Proc. No. ______________

Defendant

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS OR TO PERMIT INSPECTION OF PREMISES IN A BANKRUPTCY CASE (OR ADVERSARY PROCEEDING)

To: Claudia S. Ayoub, [redacted]
*(Name of person to whom the subpoena is directed)*

[X] *Production*: **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material:

| PLACE | DATE AND TIME |
|---|---|
| 9393 N. 90th St., STE 121<br>Scottsdale, AZ 85258 | December 19, 2025<br>at 5:00pm |

[ ] *Inspection of Premises*: **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| PLACE | DATE AND TIME |
|---|---|
| | |

The following provisions of Fed. R. Civ. P. 45, made applicable in bankruptcy cases by Fed. R. Bankr. P. 9016, are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and 45(g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: 12/5/25

CLERK OF COURT

_________________________
*Signature of Clerk or Deputy Clerk*

OR

[signature]
*Attorney's signature*

The name, address, email address, and telephone number of the attorney representing *(name of party)* RC PV Lender I LLC, who issues or requests this subpoena, are:

Charles A. Beckham, Jr., Haynes and Boone, LLP, 1221 McKinney Street, Suite 4000, Houston, Texas 77010; 713-547-2000; charles.beckham@haynesboone.com

**Notice to the person who issues or requests this subpoena**

If this subpoena commands the production of documents, electronically stored information, or tangible things, or the inspection of premises before trial, a notice and a copy of this subpoena must be served on each party before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

## PROOF OF SERVICE

**(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)**

I received this subpoena for *(name of individual and title, if any)*: ______________________________________________
on *(date)* __________ .

☐ I served the subpoena by delivering a copy to the named person as follows: ____________________________________
____________________________________________________________________________________________________
__________________________________ on (*date*) ___________________ ; or

☐ I returned the subpoena unexecuted because: ____________________________________________________________
____________________________________________________________________________________________________

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of $ _______________________ .

My fees are $ _________ for travel and $_________ for services, for a total of $_________ .

I declare under penalty of perjury that this information is true and correct.

Date: _______________

________________________________________________
*Server's signature*

________________________________________________
*Printed name and title*

________________________________________________
*Server's address*

Additional information concerning attempted service, etc.:

# Federal Rule of Civil Procedure 45(c), (d), (e), and (g) (Effective 12/1/13)

**(made applicable in bankruptcy cases by Rule 9016, Federal Rules of Bankruptcy Procedure)**

**(c) Place of compliance.**

*(1) For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:

(A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or

(B) within the state where the person resides, is employed, or regularly transacts business in person, if the person

(i) is a party or a party's officer; or

(ii) is commanded to attend a trial and would not incur substantial expense.

*(2) For Other Discovery.* A subpoena may command:

(A) production of documents, or electronically stored information, or things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and

(B) inspection of premises, at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

*(1) Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.

*(2) Command to Produce Materials or Permit Inspection.*

*(A) Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.

*(B) Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:

(i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.

(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

*(3) Quashing or Modifying a Subpoena.*

*(A) When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:

(i) fails to allow a reasonable time to comply;

(ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);

(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

(iv) subjects a person to undue burden.

*(B) When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

(i) disclosing a trade secret or other confidential research, development, or commercial information; or

(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.

*(C) Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and

(ii) ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

*(1) Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:

*(A) Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.

*(B) Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.

*(C) Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.

*(D) Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

*(2) Claiming Privilege or Protection.*

*(A) Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:

(i) expressly make the claim; and

(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

*(B) Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

…

**(g) Contempt.** The court for the district where compliance is required – and also, after a motion is transferred, the issuing court – may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013)

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **IN RE:** | § | **CASE NO. 25-90607 (ARP)** |
| **F-STAR SOCORRO, L.P., *et al.*,** | § | **CHAPTER 11** |
| **DEBTORS.**[2] | § | **Jointly Administered** |

**NOTICE OF DOCUMENT PRODUCTION REQUESTS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 45 TO CLAUDIA S. AYOUB AND SUBPOENA**

TO: Claudia S. Ayoub, [redacted]

PLEASE TAKE NOTICE that, pursuant to Federal Rule of Civil Procedure 45, made applicable herein by Federal Rule of Bankruptcy Procedure 9016, RC PV Lender I LLC (the "Lender"), by and through its undersigned counsel, requests that Claudia S. Ayoub produce for inspection, copying, and use all documents in its possession, custody, or control referred to in **Exhibit A** attached hereto, which is incorporated herein by reference by delivering a copy of the same to 9393 N. 90th Street, STE 121, Scottsdale,

[2] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are F-Star Socorro, L.P. (7438); Five Star Development Properties, LLC (2183); Five Star Development Resort Communities, LLC (1282); Five Star Resort Holdings Parent, LLC (N/A); Five Star Resort Holdings, LLC (N/A); Five Star Resort Mezz, LLC (N/A); Five Star Resort Owner, LLC (4994); Five Star Land Holdings Parent, LLC (N/A); Five Star Land Holdings (AZ), LLC (N/A); Five Star Land Mezz, LLC (N/A); Five Star Land Owner, LLC (N/A); FSPV Mezz C Sub LLC (5233); FSPV Res C, LLC (8745); 11751 Alameda Avenue Owner, LLC (2300); JNY Building Owner, LLC (6282); JNY II Building Owner, LLC (9687); 1340 Bob Hope Drive Owner, LLC (4986); JNY, L.P. (3609); JNY II, L.P. (3041); 5 Star Tech I, L.P. (4020); 5 Star Tech II-1, LP (5916); 5 Star Tech II-4, LP (2357); 5-Star Tech II-2, L.P. (6602); F-Star Socorro Holding Co., LLC (6729); JNY Mezz, LLC (N/A); JNY II Mezz, LLC (N/A); 5 Star Tech I GP, LLC (N/A); 5 Star Tech II-1 GP, LLC (N/A); 5 Star Tech II-4 GP, LLC (N/A); 1340 Bob Hope Drive Parent, LLC (N/A); 11751 Alameda Avenue Parent, LLC (N/A); Unit 82 El Paso Owner, LLC (2399); Southwest Rojas Parent, LLC (N/A); and Southwest Rojas, LLC (N/A). The Debtors' mailing address in these Chapter 11 Cases is 6720 N. Scottsdale Rd., #130, Scottsdale, AZ 85253.

AZ 85258, or a mutually agreeable location or by electronic means, on or before the **19th day of December, 2025 at 5:00 p.m.**

Dated: December 5, 2025

Respectfully submitted,
*/s/ Charles A. Beckham, Jr.*

HAYNES AND BOONE, LLP
Charles A. Beckham, Jr.
Texas Bar No. 0201660
Patrick L. Hughes
Texas Bar No. 10227300
Imaan Patel
Texas Bar No. 24139247
Adam Schmit
Texas Bar No. 24138414
1221 McKinney Street, Suite 400
Houston, TX 77010
Tel: 713-547-2000
Fax: 713-547-2600
Email: charles.beckham@haynesboone.com
Email: patrick.hughes@haynesboone.com
Email: imaan.patel@haynesboone.com
Email: adam.schmit@haynesboone.com

-and-

DAVIS POLK & WARDWELL LLP
Marshall S. Huebner (*pro hac vice*)
Elliot Moskowitz (*pro hac vice*)
Eli J. Vonnegut (*pro hac vice*)
Adam M. Greene (*pro hac vice*)
450 Lexington Avenue
New York, NY 10017
Tel: 212-450-4000
Fax: 212-701-5800
Email: marshall.huebner@davispolk.com
Email: elliot.moskowitz.com
Email: eli.vonnegut@davispolk.com
Email: adam.greene@davispolk.com

*Attorneys for RC PV Lender I LLC*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on December 5, 2025, a true and correct copy of *RC PV Lender I LLC'S Notice of Intent to Issue Third-Party Subpoena to Claudia S. Ayoub and Subpoena* was served by CM/ECF to those participating in the Court's ECF notification system.

*/s/ Charles A. Beckham, Jr.*

Charles A. Beckham, Jr.

**Exhibit A**
**REQUESTS FOR PRODUCTION**

## DEFINITIONS

As used herein, the following terms shall have the meanings indicated below:[1]

1. "11751 Alameda Property" means real property located at 11751 Alameda Avenue, El Paso, Texas 79927.

2. This "Action" and the "Chapter 11 Cases" mean and refer to these jointly administered legal proceedings pending before the Honorable Alfredo R. Perez in the United States Bankruptcy Court for the Southern District of Texas and captioned *In re: F-Star Socorro L.P.*, Case No. 25-90607-ARP.

3. "Affiliate" shall have the full meaning ascribed in Bankruptcy Code § 101(2).

4. "Alameda Properties" means real property located at (i) 1340 Bob Hope Drive, El Paso, Texas 79936; (ii) 11891 Alameda Avenue, El Paso, Texas 79927; (iii) 11801 Alameda Avenue, El Paso, Texas 79927; (iv) 11091 Alameda Avenue, El Paso, Texas, 79927; (v) 12183 Alameda Avenue, Clint, Texas 79836; and (vi) certain land parcels located at 11751 Alameda Avenue, Socorro, Texas 79927.

5. "All," "any," and "each" shall each be construed as encompassing any and all.

6. The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

[1] Capitalized terms used but not defined herein shall have the meaning ascribed in the *Amended Declaration of Lance Miller in Support of the Debtors' Chapter 11 Petitions and First Day Pleadings* [ECF No. 71-1].

7. "Armstrong" means Armstrong Residential Services, LLC, which, for the avoidance of doubt, shall be construed as an Entity as defined herein.

8. "Assets" means both real assets and intangible assets, including real property (whether owned or leased), facilities, businesses, business lines, Intellectual Property, goodwill, contracts, rights to recover under any insurance policy, causes of action, inventory, cash, cash equivalents, securities, and prescriptions.

9. "Bank OZK" means Bank OZK which, for the avoidance of doubt, shall be construed as an Entity as defined herein.

10. "Bankruptcy Code" means Title 11 of the United States Code.

11. "Bankruptcy Rules" means the Federal Rules of Bankruptcy Procedure and "Local Bankruptcy Rules" means the Local Rules of the United States District Court for the Southern District of Texas. "Federal Rules" means the Federal Rules of Civil Procedure and "Local Rules" means the Local Rules of Civil Procedure of the United States District Court for the Southern District of Texas.

12. "Board" means an organization's board of directors and any other governing bodies, including any committees, subcommittees, or delegations to disinterested directors.

13. "Buckeye Property" means real property located at 8585 W. Buckeye Rd., Tolleson, AZ 85353.

14. "ClayCo" means ClayCo, Inc., which, for the avoidance of doubt, shall be construed as an Entity as defined herein.

15. "Communicate" or "Communication" means the transmittal of information by any method in the form of facts, ideas, inquiries or otherwise, including electronically.

16. "Concerning," "Evidencing," "Referring," "Regarding," "Relating," and "Showing" means any Document that assesses, concerns, constitutes, contains, describes, discusses, embodies, evidences, identifies, includes, informs, records, refers, reflects, regards, shows, states, or otherwise relates to the Requested subject matter in any way, whether directly, indirectly, wholly, partially, or remotely.

17. "Debtors," "Five Star," and "F-Star" means F-Star Socorro, L.P. and all of its affiliated debtors and debtors in possession identified in the jointly administered Chapter 11 Cases, as well as all predecessors and predecessors-in-interest, including the Debtors' Professionals in the Chapter 11 Cases.

18. "Deutsche Bank" means Deutsche Bank AG, which, for the avoidance of doubt, shall be construed as an Entity as defined herein.

19. "DIP" means debtor in possession and shall have the full meaning ascribed in Bankruptcy Code § 1101(1).

20. These Requests incorporate by reference herein the defined terms set out in the DIP financing proposals submitted to the Court for consideration and shall each be distinguished by the addition of the relevant lender's name in abbreviated form. For example, "Sandton DIP Term Sheet" refers to the term sheet summarizing the principal terms of Debtors' financing proposal recorded at ECF No. 52, while "RC PV Term Sheet" refers to the term sheet summarizing the principal terms of RC PV's financing proposal recorded at ECF No. 55.

21. "Debtors' DIP Motion" means Debtors' Emergency Motion for Entry of Interim and Final Orders (I) Authorizing Debtors to (A) Obtain Postpetition Secured Financing and (B) Use Cash Collateral; (II) Granting Liens and Providing Claims with

Superpriority Administrative Expense Status; (III) Granting Adequate Protection to the Prepetition Secured Parties; and (IV) Granting Related Relief filed in this Action on November 5, 2025 at ECF No. 17, as well as all of Debtors' related filings, including, without limitation, Debtors' Revised Proposed Interim DIP Orders filed on November 6, 2025 at ECF No. 52 and on November 7, 2025 at ECF No. 62.

22. "Document" shall be construed as synonymous in meaning and equal in scope to the usage of the term "documents or electronically stored information" in Federal Rule 34. Examples of documents include, but are not limited to, all tangible things and writings in any form, calendars, correspondence, diaries, manuals, memoranda, notes, reports, records, drawings, graphs, charts, photographs, sound recordings, images, video recordings, telephone records, Bloombergs, electronic mail messages, instant messages, spreadsheets, databases, all other forms of electronic communication, and other data or data compilations of whatever nature stored in any medium (including those from which information can be obtained or translated if necessary into a reasonably useable form). For the avoidance of doubt, Documents shall include all originals of any nature whatsoever and all non-identical copies thereof, whether different from the originals by reason of any notations, changes, or otherwise.

23. "Electronically Stored Information" and "ESI" are synonymous in meaning and equal in scope to the usage of those terms in Federal Rule 34.

24. Unless and except as noted otherwise, any "Entity" other than a natural person shall be construed to include, without limitation: (a) any agent, Affiliate, appointee, assign, associate, association, attorney, Board, body, business, corporation, committee, control person, consultant, corporate parent, department, director, division, employee,

leadership, manager, member, officer (including company officers, municipal officers, or otherwise), official, organization, owner, partner, partnership, predecessor, principal, proprietor, representative, servant, subsidiary, successor, or volunteer, whether current, former, foreign, domestic, private, or government in nature; (b) any Person associated with, controlled by, or owned by that Entity, whether directly, indirectly, wholly, or in part; and (c) any other Person acting or purporting to act on behalf of anyone or anything listed in (a) or (b) of this Definition.

25. "Estate Homes" means the Ritz-Carlton-branded estate homes that are a component of the Project.

26. "Fortress" means Fortress Investment Group, LLC, which, for the avoidance of doubt, shall be construed as an Entity as defined herein.

27. "Froberts" means Froberts Constructions, Inc., which, for the avoidance of doubt, shall be construed as an Entity as defined herein.

28. "General Contractors" means Froberts, Armstrong, VKW, Layton, PWI, Red Mountain, and ClayCo.

29. "Hotel" means the Ritz-Carlton resort that is a component of the Project.

30. "Identify" shall be construed in context, specifically:

a. When referring to a Person, "Identify" means to provide, to the extent known, (i) their full legal name; (ii) their present or last known address; and (iii) when referring to a natural person, their present or last known place of employment. After a Person has been identified in accordance with this Definition, only their name is

required in response to subsequent discovery requesting the identification of that Person.

b. When referring to a Document, "Identify" means to provide, to the extent known, the: (i) type of Document; (ii) title; (iii) general subject matter; (iii) creation date; and (iv) author, sender, contributor, addressee, or recipient.

31. "Interim DIP Order" means the interim debtor-in-possession financing relief ordered by this Court on November 6, 2025 as recorded at ECF No. 66.

32. "Joe Battle Property" means real property located at (i) 1273 Joe Battle Boulevard, El Paso, Texas; (ii) 1277 Joe Battle Boulevard, El Paso, Texas; (iii) 1281 Joe Battle Boulevard, El Paso, Texas; (iv) 1301 Joe Battle Boulevard, El Paso, Texas; (v) 1321 Joe Battle Boulevard, El Paso, Texas.

33. "JVP" means Jerusalem Venture Partners, which, for the avoidance of doubt, shall be construed as an Entity as defined herein.

34. "Layton" means Layton Construction Company LLC, which, for the avoidance of doubt, shall be construed as an Entity as defined herein.

35. "Madison" means Madison Realty Capital, LLC, which shall be construed as an Entity as defined herein and shall include, without limitation, its subsidiary corporation RC PV Lender I LLC, which will be identified as "RC PV" or "Lender" when it is being referred to in its own capacity without incorporating the full meaning of the Madison Entity.

36. "Marriott" means Marriott International, Inc., which, for the avoidance of doubt, shall be construed as an Entity as defined herein.

37. "Miller DIP Declaration" means the Declaration of Lance Miller filed by Debtors on November 5, 2025 at ECF No. 18 in support of Debtors' DIP Motion.

38. "Operating Agreement" means that certain Operating Agreement dated as of May 18, 2007 by and between Ritz-Carlton and Five Star Development Resort Communities, LLC, as amended or modified.

39. "Paradise Valley" means the Town of Paradise Valley, Arizona, which, for the avoidance of doubt, shall be construed as an Entity as defined herein.

40. "Person" means any natural person or Entity, as that term is defined herein.

41. "Petition Date" means November 4, 2025.

42. "Pivot" means Pivot Management Group, LLC, which, for the avoidance of doubt, shall be construed as an Entity as defined herein.

43. "Possession," "Custody," or "Control" include not only information that is within Your actual possession or ownership, but also information which You have the legal right or practical ability to obtain from others including but not limited to Affiliates, agents, attorneys, current and former representatives, and other third parties.

44. "Pre-Commencement Agreement" means that certain Pre-Commencement Agreement dated as of May 18, 2007 by and between Ritz-Carlton and Five Star Development Resort Communities, LLC, as amended by that certain Amendment, Assignment and Assumption of Pre-Commencement Agreement dated as of September 29, 2017 by and among Ritz-Carlton, Five Star Development Resort Communities, LLC, and FIVE STAR RESORT OWNER, LLC, as otherwise amended or modified.

45. "Professional" means any Person involved in the provision of professional services of any kind at any time, including without limitation, any attorneys, consultants, advisors, and testifying or non-testifying experts.

46. "Project" means the development and construction of the Debtors' mixed-use development on land in Paradise Valley and Scottsdale, Arizona.

47. "PWI Construction" and "PWI" means PWI Construction, Inc., which, for the avoidance of doubt, shall be construed as an Entity as defined herein.

48. "Red Mountain" means Red Mountain Commercial LLC, which, for the avoidance of doubt, shall be construed as an Entity as defined herein.

49. "Residential License and Development Agreement" means that certain Residential License and Development Agreement dated as of May 18, 2007 by and between Ritz-Carlton and Five Star Development Resort Communities, LLC, as amended or modified.

50. "Ritz-Carlton" means Ritz-Carlton Hotel Company, L.L.C., which, for the avoidance of doubt, shall be construed as an Entity as defined herein.

51. "Ritz-Related Properties" means the five land parcels located at 7000 East Lincoln Drive, Paradise Valley, Arizona 85253, which include the "Palmeraie Scottsdale," "Palmeraie Paradise Valley," the Hotel, the Villas, the Estate Homes, and the Ritz-Carlton estate lots.

52. "Sandton" means Sandton Capital Solutions Master Fund VI, LP, which, for the avoidance of doubt, shall be construed as an Entity as defined herein

53. "Starwood" means Starwood Property Trust, Inc., which, for the avoidance of doubt, shall be construed as an Entity as defined herein.

54. "Villas" means the Ritz-Carlton-branded villas that are a component of the Project.

55. "VKW" means VKW Construction, LLC, which, for the avoidance of doubt, shall be construed as an Entity as defined herein.

56. "You" and "Your" mean and refer to Claudia S. Ayoub, any direct or indirect agents, affiliates, employees, consultants, accountants, representatives, and all other persons or entities acting or purporting to act on your behalf or control.

57. The use of the singular form of any word includes the plural, and vice versa, and any tense of a verb includes all tenses thereof.

## INSTRUCTIONS

1. The preceding Definitions apply to these Instructions and each of the succeeding Requests. All terms defined above shall have the meanings set forth therein, whether capitalized in the Requests or not.

2. All Documents, Communications, and information requested herein is to be produced, wherever located, if it is in the possession, custody or control of, or is available or accessible to You or any of Your current or former officers, directors, employees, agents, consultants, counsel, investigators, representatives or any other Person or Persons acting for You or on Your behalf.

3. The Documents and Communications requested shall be produced as they are kept in the ordinary course of business or shall be organized and labeled according to the number of the Request.

4. The duty to produce Documents and Communications shall not be limited or affected by the fact that the same Document or Communication is available through

another source. All Documents and Communications should be produced which are not subject to an objection and are in the possession, custody or control of, or available to, You or and of Your current or former officers, directors, employees, agents, consultants, counsel, investigators, representatives or any other Person or Persons acting for You or on Your behalf.

5. Any copy of a Document or Communication that varies in any way whatsoever from the original or from any other copy of the Document or Communication, whether by reason or any handwritten mark or other notation or any omission, is a separate Document or Communication and must be produced, whether or not the original of such a Document or Communication is within your possession, custody, or control. A request for any Document or Communication includes a request for all drafts thereof, and all revisions and modifications thereto, including any red-lined versions or document comparisons, in addition to the document itself. Each Document and Communication is to be produced in its entirety, without abbreviation or expurgation.

6. If any portion of any Document or Communication is responsive to any request, the entire Document or Communication must be produced. In producing Documents and Communications, all Documents and Communications that are attached to each other (physically or digitally), or segregated or separated from other Documents or Communications, when originally located, should be produced as is.

7. In the event that You assert any form of objection or privilege as a ground for not producing Documents or Communications in response to a Request or any part of a Request, set forth the legal grounds and facts upon which Your objection or assertion of privilege is based. If Your objection relates to only part of a Document or Communication,

You should produce the remainder of the Document or Communication in full. If any Documents or Communications requested have been destroyed, lost, mislaid or are otherwise missing, You should provide as much information as You have about such Documents or Communications, including when the Document or Communication was destroyed, the identity of the Person who destroyed the Document or Communication, and the identity of the Person who directed that it be destroyed. Additionally, detail the reasons for the destruction, describe the nature of the Document or Communication and the date thereof, identify the Persons who created, sent, received, or reviewed the Document or Communication, state in as much detail as possible the contents of the Document or Communication, and note whether any copies exist.

8. Any Document, Communication, or other information sought to be identified or obtained within the scope of these Requests that is withheld on the basis of a claim of privilege, work product protection, or any other grounds should be identified in writing by date, title/file name/"re line"/subject, addressee/to/cc/bcc, addressor/from, document type, and topic covered and listed with a statement of the grounds alleged for withholding such document, communication, or other information, including any common interest or joint defense privilege claimed. The Debtors shall provide their initial privilege log(s) within 10 days after withholding any documents in response to the Requests.

9. If a Document or Communication contains both privileged and non-privileged material, You must disclose the non-privileged material to the fullest extent possible without thereby disclosing the privileged material. If You assert a privilege over part of the material contained in a document, You must clearly indicate the portions as to which You claim the privilege. When a Document or Communication has been redacted or

altered in any fashion, You must Identify as to each Document or Communication the reason for the redaction or alteration. Any redaction must be clearly visible on the redacted documents.

10. In answering these Requests, furnish all Documents, Communications and information known or available. If any of these Requests cannot be responded to in full, You should respond to the extent possible. You should construe each Request as broadly as possible and to include rather than exclude any Documents or Communications.

11. If any Request herein cannot be complied with in full, comply to the fullest extent of Your ability to do so and state why full compliance is not possible.

12. These Requests are continuing in nature pursuant to Federal Rule 26(e), as made applicable to these proceedings by Bankruptcy Rules 7026 and 9014, and the responses to them must be supplemented promptly if additional Documents or Communications come into Your possession, custody, or control, or are otherwise brought to Your attention.

13. If You object to any part of any Request, You must produce all Documents and Communications that are responsive to the portions of the Request to which You do not object. You also must state the nature of, and grounds for, the objection. If the response to any Request consists, in whole or in part, of an objection on the basis of or including burdensomeness, then provide those Documents and Communications that can be produced without undue burden. For such Documents and Communications that are too burdensome to produce, describe the process or method required to obtain said Documents and Communications, the quantity and location of the documents involved, and the estimated costs of the search.

14. If an objection or request for relief is made with respect to any Request or portion thereof, the objection or request for relief shall state all grounds with specificity. Any ground not stated in the objection or request for relief within the time provided by the Bankruptcy Rules and any other applicable rules or regulations, or any extensions thereof, shall be deemed waived. If Your response to any Request is any other objection, You must indicate if information is being withheld based on the objection(s) and provide all information not covered by the objection.

15. All Documents and Communications shall be produced in TIFF file format, endorsed with Bates numbering and endorsed with confidentiality language where appropriate. Endorsed TIFF files shall be named after the production numbers. The specs for TIFF files are as follows: Single-Page, Group IV TIFF image at 300 dpi. Tiff files shall be delivered in a folder titled "Images." Excel files should be produced in their native format; native files shall be named after their starting production numbers. Native files shall be delivered in a folder titled "Natives." OCR shall be produced at the document level, each text file named per its matching document's starting production number. OCR text files shall be delivered in a folder titled "Text." The production shall be delivered with image load files (.lfp and/or .opt file types) along with a .dat file containing requested document metadata. The following metadata should be provided in the .dat file: BEGDOC, ENDDOC, BEGATTACH, ENDATTACH, PageCt, Author, To, Cc, Bcc, Custodian, Date Sent, Subject, FileName, Date LastMod and MD5Hash. Load and metadata files should be delivered in a folder titled "Data."

16. By serving these Requests, the Lender expressly reserves all rights, does not waive any of its rights, and expressly reserves the right to modify or otherwise to supplement these Requests.

**TIME PERIOD**

1. Unless otherwise indicated, each Request seeks Documents from the time period of January 1, 2018 to present.[2]

**DOCUMENT REQUESTS**

**DOCUMENT REQUEST NO. 1**

All Documents and Communications related to the purchase of any membership or other interests in the Debtors, including, but not limited to, any draft or executed membership interest purchase agreements.

**DOCUMENT REQUEST NO. 2**

Documents sufficient to show any borrower or guarantor personal financial statements of the Debtors, You, or Gerald Ayoub.

**DOCUMENT REQUEST NO. 3**

All Communications with Pivot, including, but not limited to, (a) any Communications concerning the value or marketability of the Project, the Ritz-Related Properties, the Alameda Properties, Joe Battle Property, the 11751 Alameda Property, the Buckeye Property, or any component or any combination of the foregoing, (b) any Communications concerning the role and authority of Lance Miller, (c) any

[2] Unless a different scope is apparent from a Document Request, Document Requests seeking “documents sufficient to show” generally seek the most current documents or information, as opposed to documents from January 1, 2018 to present.

Communications concerning the Sandton DIP Facility or any alternative thereto,[3] and (c) any Communications concerning the Debtors' determining to proceed with the Sandton DIP Facility instead of any alternatives thereto.

**DOCUMENT REQUEST NO. 4**

All Communications with the Debtors and Gerald Ayoub, including, but not limited to, (a) any Communications concerning the value or marketability of the Project, the Ritz-Related Properties, the Alameda Properties, Joe Battle Property, the 11751 Alameda Property, the Buckeye Property, or any component or any combination of the foregoing, (b) any Communications concerning a potential or actual bankruptcy filing by the Debtors, (c) any Communications concerning these Chapter 11 Cases, (d) any Communications concerning the Sandton DIP Facility or any alternative thereto, (e) any Communications concerning Your and Gerald Ayoub's agreement to serve as Guarantors in connection with the Sandton DIP Facility, and (f) any Communications concerning the Debtors' determining to proceed with the Sandton DIP Facility instead of any alternatives thereto.

**DOCUMENT REQUEST NO. 5**

All Documents and Communications concerning the value or marketability of the Project, the Ritz-Related Properties, the Alameda Properties, Joe Battle Property, the 11751 Alameda Property, the Buckeye Property, or any component or any combination of the foregoing, including all Document and Communications concerning Your or the Debtors' determination or calculation thereof.

[3] Any reference herein to alternatives to the Sandton DIP Facility includes the alternative DIP financing proposal to the Debtors from RC PV Lender I LLC, the terms of which are summarized in the RC PV Term Sheet.

**DOCUMENT REQUEST NO. 6**

All Communications with Starwood or Bank OZK concerning: (a) the value or marketability of the Project, the Ritz-Related Properties, the Alameda Properties, Joe Battle Property, the 11751 Alameda Property, or any component or any combination of the foregoing; (b) any estimate or calculation of the cost to complete the Project or any component thereof, or any related budget; or (c) the performance or status of any loan extended by Starwood or Bank OZK to any of the Debtors, including any alleged default or default in connection therewith.

**DOCUMENT REQUEST NO. 7**

All Documents and Communications concerning any effort by Starwood or Bank OZK to determine or calculate the value or marketability of the Project, the Ritz-Related Properties, the Alameda Properties, Joe Battle Property, the 11751 Alameda Property, or any component or any combination of the foregoing.

**DOCUMENT REQUEST NO. 8**

All Communications with Fortress, JVP, Deutsche Bank, or any other prospective investor or lender concerning: (a) the value or marketability of the Project, the Ritz-Related Properties, the Alameda Properties, Joe Battle Property, the 11751 Alameda Property, or any component or any combination of the foregoing; or (b) any estimate or calculation of the cost to complete the Project or any component thereof, or any related budge.

**DOCUMENT REQUEST NO. 9**

All Documents and Communications concerning any effort by Fortress, JVP, Deutsche Bank, or any other prospective investor or lender to determine or calculate the value or marketability of the Project, the Ritz-Related Properties, the Alameda Properties,

Joe Battle Property, the 11751 Alameda Property, or any component or any combination of the foregoing.

**DOCUMENT REQUEST NO. 10**

All Documents and Communications concerning the Residential License and Development Agreement or any related or similar agreement with Ritz-Carlton or Marriott.

**DOCUMENT REQUEST NO. 11**

All Documents and Communications concerning any estimate or calculation by Marriott or Ritz-Carlton of the cost to complete the Project or any component thereof, or any related budget, at any point in time, including but not limited to any "High Level Systems Estimates" and any similar or related materials, and all Communications with Marriott or Ritz-Calton regarding the same.

**DOCUMENT REQUEST NO. 12**

All Documents and Communications concerning any estimate or calculation by Froberts, ClayCo, or any other General Contractor of the cost to complete the Project or any component thereof, or any related budget, at any point in time.

**DOCUMENT REQUEST NO. 13**

All Documents and Communications concerning any settlement agreement(s) with Layton, including, but not limited to, documents regarding the status of any payments made or to be made under such agreement(s).

**DOCUMENT REQUEST NO. 14**

All Documents and Communications concerning any estimate or calculation by You or the Debtors of the cost to complete the Project or any component thereof, or any

related budget, at any point in time, including materials related to any "Anticipated Cost Report."

**DOCUMENT REQUEST NO. 15**

All Documents and Communications concerning any estimate or calculation by You or any other party of the timeline for completion of the Project or any component thereof, at any point in time.

**DOCUMENT REQUEST NO. 16**

All Communications with the Entities listed on Annex A hereto concerning the Project, the Ritz-Related Properties, the Alameda Properties, Joe Battle Property, the 11751 Alameda Property, or any component or any combination of the foregoing, including, but not limited to, any bids or terms sheets transmitted in connection with any contemplated, potential, or executed transaction, any assessments, calculations, estimates, or opinions of value, any estimate or calculation of the cost to complete the Project or any component thereof, and any diligence or other materials provided by the Debtors to any such Entity.

**DOCUMENT REQUEST NO. 17**

All Documents and Communications concerning the Debtors' need for debtor-in-possession financing, including, without limitation, all projections, forecasts, market reports, balance sheets, income or earnings statements, statements of cash flow, working capital needs, liquidity or capital adequacy, general ledgers, internal analytics, or operating reports examined, prepared, or relied on by the Debtors, their advisors, or any other party in connection with calculating such projected cash and financing needs.

**DOCUMENT REQUEST NO. 18**

All Documents and Communications concerning the value of the Debtors' businesses, including, without limitation, all formal or informal valuations of any of those businesses, and any discounted cash flow analysis used to value any of the Debtors.

**DOCUMENT REQUEST NO. 19**

All Documents and Communications concerning any transfers or transactions between You and any Debtor in the year prior to the Petition Date.

**DOCUMENT REQUEST NO. 20**

All Document and Communications concerning the Sandton DIP Facility and any related agreements, including but not limited to any negotiations with Sandton or any of their advisors concerning the Sandton DIP Facility.

**DOCUMENT REQUEST NO. 21**

All Documents and Communications concerning, without limitation, the negotiation, formulation, rejection, execution, or performance of any pledge, guarantee, collateral, commitment, contract, lien, agreement, or other operative Document concerning the Sandton DIP Facility, including in relation to any fees, expenses, terms, covenants, obligations, releases, or any other provisions contained therein, as well as any drafts thereof and any alternatives thereto.

**DOCUMENT REQUEST NO. 22**

All Communications with Sandton, including, but not limited to, (a) any Communications concerning the value or marketability of the Project, the Ritz-Related Properties, the Alameda Properties, Joe Battle Property, the 11751 Alameda Property, or any component or any combination of the foregoing, (b) any Communications concerning

the Sandton DIP Facility or any alternative thereto, and (c) any Communications concerning the Debtors' determining to proceed with the Sandton DIP Facility instead of any alternatives thereto.

**DOCUMENT REQUEST NO. 23**

All Documents and Communications concerning the Revised Proposed Interim DIP Order attached as Exhibit A to the Debtors' DIP Motion [ECF No. 62], including but not limited to all drafts and prior iterations thereof.

**DOCUMENT REQUEST NO. 24**

All Documents and Communications concerning the budget contemplated in Exhibit 2 of the Proposed Interim DIP Order [ECF No. 52-4], including but not limited to all drafts or modifications of or amendments to the budget, all prior iterations of the budget, and any assumptions used to develop and/or support the budget.

**DOCUMENT REQUEST NO. 25**

All Documents and Communications concerning the DIP Liens, including all Documents and Communications concerning the collateral under the Sandton DIP Facility, including which assets would comprise such collateral, the value of such collateral, and any valuation, analysis, or negotiations concerning what assets would be included as collateral.

**DOCUMENT REQUEST NO. 26**

All Documents and Communications concerning any analysis of the effect of the DIP Liens or the Sandton DIP Facility on creditor recoveries in the Chapter 11 Cases.

**DOCUMENT REQUEST NO. 27**

All Documents and Communications concerning the DIP Secured Parties and Prepetition Lender Parties, including, without limitation, concerning assessments and valuations of collateral, and concerning discussions, negotiation and analysis of the adequate protection provided to Prepetition Lender Parties in connection with the DIP Facility.[4]

**DOCUMENT REQUEST NO. 28**

All Documents and Communications concerning Pivot's involvement in Debtors' postpetition financing, including, without limitation, the "marketing process conducted by Pivot which was designed to secure postpetition financing on the best available terms," and Pivot's "formal outreach to potential DIP lenders on or around October 20, 2025." (*See* Miller DIP Decl. ¶ 13.)

**DOCUMENT REQUEST NO. 29**

All Documents and Communications Concerning the Debtors' attempts to obtain debtor-in-possession financing from any Person, including but not limited those related to: (a) any assessments or evaluations performed by the Debtors or the Debtors' advisors with respect to any alternative DIP financing proposals received from any Person other than Sandton; (b) any collateral offered or considered to be offered by the Debtors to any potential lender in connection with any debtor-in-possession financing; and (c) any guarantee offered or considered to be offered by You or Gerald Ayoub to any potential lender in connection with any debtor-in-possession financing.

[4] As used in this Document Request, DIP Secured Parties, and Prepetition Lender Parties shall have the meanings ascribed in the Interim DIP Order.

**DOCUMENT REQUEST NO. 30**

All Documents and Communications concerning postpetition financing considered by Debtors, whether solicited or unsolicited, including, without limitation, all agreements and proposed financing terms including revisions and improvements, the assessment of the suitability of each potential source of postpetition financing, and Debtors' ultimate determinations with respect to each.

**DOCUMENT REQUEST NO. 31**

All Documents and Communications concerning the Debtors' decision to proceed with the Sandton DIP Facility and incur the Sandton DIP Obligations, including, but not limited to (a) strategic considerations and internal analysis of the Debtors' prepetition, current and future business, and (b) all valuations, appraisals, projections and forecasts relied on by the Debtors in determining to proceed with the Sandton DIP Facility.

**DOCUMENT REQUEST NO. 32**

All Documents and Communications concerning the negotiation and formulation of the terms of the Sandton DIP Facility concerning the nine-month financing schedule referenced at Paragraph J(vi) of the Interim DIP Order, including, without limitation, the immediate availability of funds for the Villa Draw, any restrictions on Debtors' ability to make additional draws for the first nine months of the DIP Loan, and the "mutually agreed operating and collateral metrics" as referenced in Paragraph J(vi) of the Interim DIP Order.

**DOCUMENT REQUEST NO. 33**

All Documents and Communications concerning any market comparables considered with respect to the Sandton DIP Facility.

**DOCUMENT REQUEST NO. 34**

All Documents and Communications concerning all fees, interest rates, costs, default rate, and any other expenses payable under the Sandton DIP Facility or the Debtors' DIP Motion, including, without limitation, the Issuance Fee, the PIK Interest, the Exit Fee, the Default Interest Rate, the Renewal Fees, the Unused Fee, and the Minimum Multiple of Invested Capital, as each term is defined in the Sandton DIP Term Sheet, including any materials concerning the negotiation and formulation thereof.

**DOCUMENT REQUEST NO. 35**

All Documents and Communications Concerning any analysis of the fees, costs or expenses the Debtors are required to pay in connection with the Sandton DIP Facility and the loans contemplated in connection therewith, including but not limited to any assessments of whether such fees, costs or expenses are reasonable or consistent with the fees, costs or expenses paid by other debtors in connection with similar loans.