IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

---------------------------------------------------------------x
: 
In re: : Chapter 11
: 
F-STAR SOCORRO, L.P., *et al.*, : Case No. 25-90607 (ARP)
: 
Debtors.[1] : Jointly Administered
: 
---------------------------------------------------------------x

**DEBTORS' EMERGENCY MOTION FOR ENTRY OF AN ORDER
(I) AUTHORIZING THE DEBTORS TO ENTER INTO PREMIUM FINANCING
AGREEMENT AND (II) GRANTING RELATED RELIEF**

> **If you object to the relief requested or you believe that emergency consideration is not warranted, you must appear at the hearing if one is set, or file a written response prior to the date that relief is requested in the preceding paragraph. Otherwise, the Court may treat the pleading as unopposed and grant the relief requested.**
>
> **Emergency relief has been requested. Relief is requested not later than 12:00 p.m. (prevailing Central Time) on December 24, 2025.**

F-Star Socorro, L.P. and its affiliated debtors and debtors in possession (collectively, the "**Debtors**") hereby submit this motion (the "**Motion**") and respectfully request entry of an order (i) authorizing the Debtors, in their discretion, to enter into a new premium financing agreement with FIRST Insurance Funding, a Division of Lake Forest Bank & Trust

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are F-Star Socorro, L.P. (7438); Five Star Development Properties, LLC (2183); Five Star Development Resort Communities, LLC (1282); Five Star Resort Holdings Parent, LLC (N/A); Five Star Resort Holdings, LLC (N/A); Five Star Resort Mezz, LLC (N/A); Five Star Resort Owner, LLC (4994); Five Star Land Holdings Parent, LLC (N/A); Five Star Land Holdings (AZ), LLC (N/A); Five Star Land Mezz, LLC (N/A); Five Star Land Owner, LLC (N/A); FSPV Mezz C Sub LLC (5233); FSPV Res C, LLC (8745); 11751 Alameda Avenue Owner, LLC (2300); JNY Building Owner, LLC (6282); JNY II Building Owner, LLC (9687); 1340 Bob Hope Drive Owner, LLC (4986); JNY, L.P. (3609); JNY II, L.P. (3041); 5 Star Tech I, L.P. (4020); 5 Star Tech II-1, LP (5916); 5 Star Tech II-4, LP (2357); 5-Star Tech II-2, L.P. (6602); F-Star Socorro Holding Co., LLC (6729); JNY Mezz, LLC (N/A); JNY II Mezz, LLC (N/A); 5 Star Tech I GP, LLC (N/A); 5 Star Tech II-1 GP, LLC (N/A); 5 Star Tech II-4 GP, LLC (N/A); 1340 Bob Hope Drive Parent, LLC (N/A); 11751 Alameda Avenue Parent, LLC (N/A); Unit 82 El Paso Owner, LLC (2399); Southwest Rojas Parent, LLC (N/A); and Southwest Rojas, LLC (N/A). The Debtors' mailing address in these chapter 11 cases is 6720 N. Scottsdale Rd., #130, Scottsdale, AZ 85253.

Company, N.A. ("**FIRST**"), and (ii) granting related relief. In support of this Motion, the Debtors, by and through their undersigned counsel, respectfully represent:

## JURISDICTION AND VENUE

1.  The United States Bankruptcy Court for the Southern District of Texas (the "**Court**") has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and the *Order of Reference to Bankruptcy Judges from the United States District Court for the Southern District of Texas*, entered May 24, 2012. This is a core proceeding pursuant to 28 U.S.C. § 157(b). The Debtors confirm their consent to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

2.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3.  The bases for the relief requested herein are sections 105, 362, 363, and 364(c)(2) of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "**Bankruptcy Code**"), rules 4001 and 9013 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), rules 4001-1, 4002-1, and 9013-1 of the Bankruptcy Local Rules for the Southern District of Texas (the "**Bankruptcy Local Rules**"), and *the Procedures for Complex Cases in the Southern District of Texas* (the "**Complex Case Procedures**").

## BACKGROUND

4.  On November 4, 2025 (the "**Petition Date**"), each of the Debtors filed a voluntary petition with this Court for relief under chapter 11 of the Bankruptcy Code. The Debtors continue to manage and operate their business as debtors in possession under sections 1107(a) and 1108 of the Bankruptcy Code. On November 5, 2025, the Court entered an order [Dkt. No. 10] directing the consolidation and joint administration of these chapter 11 cases for

procedural purposes only pursuant to Bankruptcy Rule 1015(b) and Bankruptcy Local Rule 1015-1.

5. On November 6, 2025, the Court entered the *Order (I) Authorizing the Debtors to (A) Maintain and Renew their Prepetition Insurance Policies and (B) Pay All Obligations in Respect Thereof and (II) Granting Related Relief* [Dkt. No. 43] (the "**Insurance Order**"). The Insurance Order, among other things, provides that the Debtors are authorized to entered into new insurance premium financing agreements as needed without obtaining an order of the Court. *See* Insurance Order, ¶ 4.

6. On November 18, 2025, the Office of the United States Trustee for Region 7 (Southern and Western Districts of Texas) (the "**U.S. Trustee**") appointed a statutory committee of unsecured creditors pursuant to section 1102(a)(1) of the Bankruptcy Code [Dkt. No. 94] (the "**Creditors' Committee**"). No trustee or examiner has been appointed in these chapter 11 cases.

7. Additional information on the Debtors' businesses and capital structure, as well as a description of the reasons for filing these cases, is set forth in the *Amended Declaration of Lance Miller in Support of the Debtors' Chapter 11 Petitions and First Day Pleadings* [Dkt. No. 71] (the "**Miller Declaration**").

## RELIEF REQUESTED

8. The Debtors respectfully request entry of an order substantially in the form attached hereto (the "**Proposed Order**"), (i) authorizing, but not directing the Debtors, in their discretion, to enter into a premium financing agreement (the "**Premium Financing Agreement**") with FIRST, attached hereto as **Exhibit A**. The Debtors believe that, under the Insurance Order, they are authorized to enter into the Premium Financing Agreement in the ordinary course of business. Nevertheless, the Debtors file this Motion at the request of FIRST,

which has conditioned entry into the Premium Financing Agreement upon the Court's approval of the Proposed Order. Accordingly, the Debtors respectfully request that the Court grant the relief requested herein on an emergency basis and approve the Premium Financing Agreement with FIRST.

## BASIS FOR RELIEF REQUESTED

### I. FACTS SPECIFIC TO RELIEF REQUESTED

**A.   Overview of the Premium Financing Agreement**

9. As indicated in the Insurance Motion, the Debtors maintain various insurance policies (collectively, the "**Insurance Policies**") through a variety of insurance carriers, which provide the Debtors with, among other things, (i) commercial property insurance; (ii) builder's risk insurance; and (iii) pollution liability insurance. The Debtors also maintain multiple general liability policies, which provide, among other things, automobile liability coverage, commercial general liability coverage, employee theft coverage, umbrella liability coverage, and excess liability coverage. Additionally, the Debtors maintain a directors and officers liability insurance policy.

10. The Debtors believe that, where feasible, it is economically beneficial to finance the premium obligations for certain of their Insurance Policies (the "**Financed Policies**")[2] rather than pay them in a lump-sum. Accordingly, the Debtors, in the exercise of their reasonable business judgment and in furtherance of their duties as debtors in possession in these chapter 11 cases, seek authority to enter into the Premium Financing Agreement with FIRST, whereby, upon Court approval, and completion of its discretionary underwriting process, and acceptance of the Premium Financing Agreement, FIRST will provide financing to

---

[2] The Premium Financing Agreement includes a schedule listing the Financed Policies covered by the agreement.

4

the Debtors for the purchase of the Financed Policies. FIRST is a division of a national bank engaged in the business of financing insurance premiums.

11. The Debtors have worked diligently to negotiate the best possible terms and obtain an agreement to finance the Financed Policies. Under the Premium Financing Agreement, the total amount of premiums, taxes, and fees is $1,266,596.80. The Debtors will make a down payment in the amount of $443,308.88, and the total amount to be financed is $823,287.92. Under the Premium Financing Agreement, the Debtors will become obligated to pay FIRST the sum of $844,482.72 (which includes interest on the amount financed at 6.820% (APR)), in eight monthly installments of $105,560.34 each. The monthly installment payments are due on the first day of each month commencing on January 1, 2026.

12. To secure the repayment of the total payments, any late charges, attorney's fees and expenses, and other costs under the Premium Financing Agreement (collectively, the "**Indebtedness**"), the Debtors are granting and assigning to FIRST a first-priority lien on, and a security interest in, the Financed Policies, including all returned premiums and unearned premiums and all other collateral defined in the Premium Financing Agreement (collectively, the "**Finance Agreement Collateral**").

13. Pursuant to the Premium Financing Agreement, in the event of default, the Debtors irrevocably appoint FIRST as the Debtors' attorney-in-fact with full power of substitution and authority, to: (a) cancel the Financed Policies; (b) receive all sums assigned to it, including the Finance Agreement Collateral; and (c) execute and deliver, on the Debtors' behalf, all documents relating to the Financed Policies in furtherance of the Premium Financing Agreement.

## II. LEGAL BASIS FOR RELIEF REQUESTED

**A.    Entry Into the Premium Financing Agreement is Appropriate Under Section 363(c)(1) of the Bankruptcy Code**

14. Under section 1108 of the Bankruptcy Code, as debtors-in-possession, the Debtors are authorized to operate their businesses. Further, section 363(c)(1) of the Bankruptcy Code authorizes a debtor-in-possession to enter into ordinary course transactions and use property of the estate in the ordinary course of business.

15. Under the Insurance Order, the Debtors are authorized to enter into new premium financing arrangements as needed, without obtaining an order of the Court. *See* Insurance Order ¶ 4. Moreover, because the Debtors routinely entered into premium financing agreements before the Petition Date, the Debtors believe that entering into the Premium Financing Agreement is a proper exercise of their reasonable business judgment that is permitted under the Insurance Order and does not require prior court approval under section 363(c) of the Bankruptcy Code. The Debtors intend to enter into the Premium Financing Agreement in the ordinary course of business and believe that honoring their obligations thereunder is in the best interest of the Debtors, their estates, and all parties in interest.

**B.    The Lien and Security Interest Created by the Premium Financing Agreement Are Appropriate Under Section 364(c) of the Bankruptcy Code**

16. It is common practice for insurance premium finance lenders such as FIRST to require that the Debtors grant a security interest in the insurance policies financed in exchange for financing. Absent a first-priority lien on and security interest in the Finance Agreement Collateral, FIRST would not enter the Premium Financing Agreement. Further, the Debtors believe that they would be unable to secure such financing on an unsecured basis from another lender on economic terms comparable to those under the Premium Financing

6

Agreement. The Debtors would be unable to obtain coverage under the Financed Policies in the absence of the Premium Financing Agreement.

17. Section 364 of the Bankruptcy Code authorizes the Debtors to obtain postpetition financing in the manner proposed in the Premium Financing Agreement. Section 364(c) provides that a debtor may obtain credit secured by property that is not otherwise subject to a lien. Specifically, Section 364(c) provides, in pertinent part, that if the debtor is unable to obtain credit solely on an unsecured basis, the court "may authorize the obtaining of credit or the incurring of debt – (2) secured by a lien on property of the estate that is not otherwise subject to a lien." 11 U.S.C. § 364(c)(2). By extending secured credit under the Premium Financing Agreement, FIRST is enabling the Debtors to obtain coverage under the Financed Policies, subject to FIRST's first-priority lien and security interest. Additionally, FIRST is extending financing under the Premium Financing Agreement in good faith and entitled to the protections of section 364(e) of the Bankruptcy Code. In addition, section 105(a) of the Bankruptcy Code provides, in relevant part, that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]."

18. The Debtors and FIRST have reached an agreement that the adequate protection appropriate for this financing would be as follows:

    a. The Debtors be authorized and directed to timely make all payments due under the Premium Financing Agreement and FIRST is authorized to receive and apply such payments to the Indebtedness pursuant to the Premium Financing Agreement.

    b. If the Debtors do not make any of the payments under the Premium Financing Agreement as and when due, the stay of section 362(a) of the Bankruptcy Code (to the extent otherwise applicable) shall automatically lift (without further order of the Court) to enable FIRST and/or third parties, including insurance companies providing the coverage under the Financed Policies, to take all steps necessary and appropriate to cancel the Financed Policies, recover and collect the Finance Agreement Collateral, and apply the Finance Agreement Collateral to the Indebtedness. In

  exercising such rights, FIRST and any third parties shall comply with the notice and other relevant provisions of the Premium Financing Agreement.

  c. If any Indebtedness remains unpaid after application of the Finance Agreement Collateral, following an event of a default or otherwise, such unpaid amount shall be treated as an administrative expense claim pursuant to section 503(b)(1) of the Bankruptcy Code.

  d. If there are excess returned premiums, unearned premiums, or other Finance Agreement Collateral after application of the Finance Agreement Collateral to the Indebtedness, following an event of default or otherwise, the excess shall be turned over to the Debtors or any subsequently appointed trustee (under chapter 7 or 11 of the Bankruptcy Code).

  19. The Debtors have determined in their business judgment that the Premium Financing Agreement is the Debtors' best option and provides the most favorable terms for financing the Financed Policies. The Debtors believe the Premium Financing Agreement and its terms are commercially fair and reasonable. As discussed above and in the Insurance Motion, the nature of the Debtors' businesses makes it essential for the Debtors to maintain their Insurance Policies on an ongoing and uninterrupted basis. Without financing from FIRST, the Debtors would be unable to pay their insurance premiums, which could result in termination of the Financed Policies. Any alternative would likely require considerable cash expenditures and be detrimental to the Debtors' restructuring efforts. Approval of the Premium Financing Agreement will ensure that the Debtors can continue to operate and will not prejudice the legitimate interests of creditors and other parties in interest.

  20. Security interests created by premium financing arrangements generally are recognized as secured claims in bankruptcy to the extent of the amount of unearned premiums financed under such agreements. *See TIFCO, Inc. v. U.S. Repeating Arms Co. (In re U.S. Repeating Arms Co.)*, 67 B.R. 990, 994-95 (Bankr. D. Conn. 1986); *Drabkin v. A.I. Credit Corp. (In re Auto-Train Corp.)*, 9 B.R. 159, 164-66 (Bankr. D.D.C. 1981). Under section 361 of the Bankruptcy Code, a secured creditor—including a party with a security interest on unearned

8

premiums—is also entitled to adequate protection to the extent of the diminution in value of its collateral. *See, e.g., In re Waverly Textile Processing, Inc.*, 214 B.R. 476 (Bankr. E.D. Va. 1997); *In re Megamarket of Lexington, Inc.*, 207 B.R. 527 (Bankr. E.D. Ky. 1997); *In re Krimbrell Trucking Co., Inc.*, 3 B.R. 4 (Bankr. W.D. Wash. 1979).

21. Accordingly, the Debtors believe that it is in the best interest of their estates and the creditors to (a) execute the Premium Financing Agreement; (b) grant FIRST the liens and security interests described herein; (c) authorize FIRST to terminate the Premium Financing Agreement and collect any amount due if Debtors default on its obligations under the Premium Financing Agreement; and (d) authorize the Debtors to timely make the all payments due to FIRST under the Premium Financing Agreement.

22. The Debtors submit that the Motion is appropriate and similar to insurance premium financing agreements approved in other chapter 11 cases in this jurisdiction.[3]

## EMERGENCY CONSIDERATION

23. Pursuant to Bankruptcy Local Rule 9013-1, the Debtors request emergency consideration of this Motion. The Debtors have an immediate need for approval of the Premium Financing Agreement to maintain their Insurance Policies during these chapter 11 cases. Maintaining these Insurance Policies is essential to the viability of the Debtors' operations, and any delay or failure to obtain the requested relief could result in immediate and irreparable harm, severely disrupting operations at this critical juncture and jeopardizing the success of the chapter 11 cases. Accordingly, the Debtors have demonstrated that the requested

---

[3] *See, e.g., In re Razzoo's, Inc., et al.*, No. 25-90522 (ARP) (Bankr. S.D. Tex. Oct. 17, 2025) [ECF No. 85]; *In re Goodrich Petroleum Corp.*, No. 16-31975 (Bankr. S.D. Tex. Jun. 20, 2016) [ECF No. 335].

relief is "needed to avoid immediate and irreparable harm," and respectfully request that the Court grant the relief sought in this Motion.

24. The urgency of the relief requested justifies immediate relief. To ensure the relief requested is implemented immediately, the Debtors request that the Court waive the notice requirements under Bankruptcy Rule 6004(a), if applicable, and the 14-day stay of an order authorizing the use, sale, or lease of property under Bankruptcy Rule 6004(h).

## NOTICE

25. The Debtors will provide notice of this Motion to the following parties or their respective counsel: (i) the U.S. Trustee; (ii) the Creditors' Committee; (iii) the lenders and/or agents under the Debtors' prepetition debt instruments; (iv) the lender under the Debtors' debtor-in-possession financing instruments; (v) the Internal Revenue Service; (vi) the Securities and Exchange Commission; (vii) the state attorneys general for states in which the Debtors conduct business; (viii) FIRST; and (ix) any other party entitled to receive notice pursuant to Bankruptcy Rule 2002. A copy of this Motion is also available on the Debtors' case website at https://cases.stretto.com/FStarSocorro. Due to the urgency of the relief requested, the Debtors submit that no other or further notice is necessary.

*[Remainder of Page Intentionally Left Blank]*

## **CONCLUSION**

WHEREFORE, the Debtors respectfully request entry of the Proposed Order granting the relief requested in its entirety and any other relief as is just and proper.

Dated: December 22, 2025
　　　　Dallas, Texas

/s/ Nicholas J. Hendrix
**O'MELVENY & MYERS LLP**
Nicholas J. Hendrix (TX Bar No. 24087708)
2801 North Harwood Street, Suite 1600
Dallas, Texas 75201
Telephone: (972) 360-1900
Facsimile: (972) 360-1901
Email: nhendrix@omm.com

- and -

Julian Gurule (admitted *pro hac vice*)
400 South Hope Street, 19th Floor
Los Angeles, California 90071
Telephone: (213) 430-6000
Facsimile: (213) 430-6407
Email: jgurule@omm.com

- and -

Peter Friedman (admitted *pro hac vice*)
Matthew Kremer (admitted *pro hac vice*)
Diana M. Perez (admitted *pro hac vice*)
1301 Avenue of the Americas, Suite 1700
New York, New York 10019
Telephone: (212) 326-2000
Facsimile: (212) 326-2061
Email: pfriedman@omm.com
　　　　mkremer@omm.com
　　　　dperez@omm.com

*Attorneys for the Debtors and Debtors in Possession*

**Certificate of Accuracy**

In accordance with Bankruptcy Local Rule 9013-1(i), I hereby certify that the foregoing statements are true and accurate to the best of my knowledge.

                                                          */s/ Nicholas J. Hendrix*
                                                          Nicholas J. Hendrix

**Certificate of Service**

I certify that on December 22, 2025, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas and will be served as set forth in the Affidavit of Service to be filed by the Debtors' noticing agent.

                                                          */s/ Nicholas J. Hendrix*
                                                         Nicholas J. Hendrix